Applying well-settled principles of contract construction, principles that long predate the current COVID-19 pandemic, Lindenwood asks for reversal of the judgment dismissing its insurance claim claimed below. This appeal presents importantly a question that this court has thus far not addressed in the many plaintiffs' attorneys who have come before me today. That question is under Missouri law. Does intrusion of the coronavirus into the insurance property, making that property less useful or valuable constitute physical damage under the policy as an ordinary layperson purchasing insurance would understand it? And while there have been many cases before me in this circuit, none of those cases and none of the cases I've identified in the other circuits that are cited in the briefs had a fact pattern that were like the one before the court today. That is that Lindenwood closed its campus to on-person activities before any government order it to do so, and Lindenwood could not use its campus for alternative purposes like restaurants used their facilities for carry-out and the only people who remained on the campus were essential workers to keep the property up to date. I'm going to spend my time discussing the issue today of physical damage, but I'm happy to address the issue of the exclusion if the court has questions or on rebuttal. To prevail, I think it is important that under Missouri law, as this court laid out in Vote versus State Farm, under Missouri law and ensure it need only prove that the policy supports their claim for coverage and that the policy terms are reasonably construed in favor of the insurer. That means that Zurich can come in and point to alternative meanings of words, and they may be reasonable meanings, they may be better meanings, but they do not control under Missouri law unless they can prove that our interpretation is unreasonable. I want to focus on three reasons why Lindenwood's claim here is not unreasonable. First, as this court recognized in the Vote case and prior to that in the Machika Transportation case, where several courts have examined an issue in very similar circumstances and have reached different conclusions regarding that issue, that supports that the terms of the policy are ambiguous. Here, we've cited to the court two Missouri judges who have determined that the intrusion of coronavirus onto property is physical damage. The Craven case, that's Judge Sutton, who now sits on the Missouri Court of Appeals, and the Casey-Hopp case, which is Judge Boo in the Western District of Missouri. In addition, we've cited in our brief over a dozen decisions outside Missouri of trial courts that have found that the intrusion of coronavirus, unlike just stay-at-home orders, constitutes physical damage. Under this court's precedent, that is evidence of ambiguity, meaning the phrase should be construed in favor of Lindenwood. Second, I would submit that the ordinary meaning of the phrase physical damage supports Plaintiff's interpretation. It's undisputed, based on the dictionary definitions that we cited in our brief, physical means to have a material existence. It means can the damage be seen, felt, or touched? Damage means to make something less useful or less valuable. We have alleged very clearly in our complaint, and I don't think anyone would dispute, the coronavirus is material. It can be seen, felt, or touched. It does attract, attach to property, and it does make the property less useful, as we've alleged in our complaint. That's distinguishing this case from, for example, oral surgeons, which was the initial case decided in this circuit on the issue of business interruption coverage. The only thing that had been alleged in that case to have caused physical damage was the stay-at-home orders, which prevented the restaurant or the dental practice from using their facilities. An order telling you you can't do something is an intangible restriction. In contrast, when the coronavirus is alleged to have been present, then we have something physical. At that point, we have alleged enough to proceed into discovery. Third, I would submit that the context of the policy as a whole supports Lindenwood's reading. We have cited a number of exclusions that are contrary to Lindenwood's interpretation that a virus, because it's not a physical alteration to property, cannot constitute physical damage. This policy excludes damage caused by smoke, gas, liquid, vapor. It has an unmodified contamination exclusion that uses the word virus. It has an ammonia exclusion. It has an exclusion for cumulative effects of dust. Those exclusions would be superfluous if something like coronavirus, if present, did not cause physical damage. I want to talk about the exclusion for a minute. In your letter you filed this morning, you referenced a case from, I think it was Texas, and I clicked on the site. It was interesting, in that case, the jury found in favor of the insured against Lloyd's of London, but the district court had dismissed the case against two other insurers because they had the same exclusion that's in this policy. It seems pretty clear that the exclusion would cover this situation, unless you're right that the mandatory endorsement that has the word Louisiana opposite it applies. I just had a lot of trouble understanding that argument. I look at the index of the policy and appendix 98, 99, there's 31 mandatory endorsements, each specifying a specific state. If you said all 31 of those applied to this policy because we ignore the caption, the policy would make no sense. I'm glad you asked that. I disagree. Let me tell you why. Not all of those endorsements would you need to rely upon the title of the policy in order to determine whether they apply. This one was called Louisiana endorsement. There were two of them which were called Connecticut endorsement and New York endorsement. In each of those, unlike the Louisiana, the text of the endorsement says it applies to insured property in Connecticut and in New York. The Louisiana endorsement didn't contain that language. What they're asking you to do is to impute that language into the title. That language wouldn't have been necessary if we can look at the titles. I would also say that I disagree that these endorsements are all conflicting because the only thing they have cited or identified as conflicting among these endorsements would be the statute of limitations which is really the time period to bring a claim. Missouri law provides an answer. If an insurance company does something like this and they have all these endorsements and they don't make clear where they apply, then it's an ambiguity. It's uncertain. It's indistinct. It is duplicitous or duplicitous. That ambiguity has to be construed in favor of the insured. The policy is very clear here. It says specifically, contrary to the default rule, that we don't look to the titles. The titles are, quote, solely for reference. They cannot, quote, in any way affect the provisions to which they relate. When they wanted the endorsement titled by a state to apply only to property in that state, they said so specifically in the Connecticut and in the New York endorsements. I would submit that it would be reasonable for a policyholder to conclude that they're entitled to the benefit of that endorsement. The contrary rule, if that endorsement favored Zurich, I bet they would be arguing that they should have the benefit of that exclusion. That's why the rule against ambiguities exists because they're the drafter of the policy and they're the ones that can make that clear. With no further questions, I'll reserve my time. Thank you. Good morning, your honors. May it please the court, Patrick Hofer for Appalachia Zurich. First, I'll make two points very briefly. As many appellate courts have now held, the presence of the COVID-19 virus does not cause direct physical loss of or damage to property. Second, regardless, that argument would seek coverage for a condition of property arising out of the actual presence of a pathogenic organism or a disease-causing, illness-causing agent, specifically a virus, including for inability to use or occupy property or for costs to restore property. And all of that is specifically excluded by the words from the contamination exclusion. So the argument that the presence of the virus is what's at issue here simply puts the claim directly into the contamination exclusion. So what's your argument about the policy says ignore the title, the headings, and you did use specific reference to states in two of the mandatory endorsements? Your honor, as you pointed out, there are 31 state-specific endorsements. This is one of them. It would be impossible to reconcile the operation of all of those endorsements if the title, if the caption at the top of each of those endorsements was not given effect. The title of the endorsement is mandatory endorsement, and then it says which one, and they're in alphabetical order, and Louisiana is one of them. The only reasonable interpretation of the policy is that each endorsement applies to each state. There's a Missouri endorsement. There's an Illinois endorsement. Those endorsements don't change the contamination exclusion. So that language in the Louisiana endorsement applies to Louisiana, and that's the holding of every appellate decision in the country on this issue. Palomar, the Ninth Circuit said that. A.C. Oceanwalk and the New Jersey Appellate Division said that, and in Firebirds, the Illinois Appellate Court agreed. And there are multiple trial court decisions that agree on the same point. So really, I think Lindenwood concedes if, absent that argument, the contamination exclusion applies. So there's really no issue about that, and the only argument it has is it relies on the one trial court decision in North Carolina, the Novant case, Middle District of North Carolina. Now that case said, I don't understand why there are 31 endorsements in this policy because the health care enterprise there was only based in North Carolina and Virginia, in the Carolinas. Why do we have all these other endorsements? Well, we've explained that here. We've explained why there are 31 state mandatory endorsements, so the logic of Novant is rebutted. In other words, our policy covers the insured's property, including newly acquired property. So if they acquired a new campus in some other location, that would be covered under the newly acquired property, and there's a mandatory endorsement to go with that newly acquired property. It also covers property in transit, which could be anywhere. So there's an explanation for why all those endorsements are in the policy and therefore the Novant logic doesn't apply. I might point out as well, the judge in Novant also said it was plausible that loss of use of property constitutes physical loss, and that holding subsequently was rejected by the North Carolina Court of Appeals in the North State Delhi case, and of course is rejected by this court and oral surgeons. So the reliability of the Novant case may be open to question. As for the question of whether the presence of the virus can cause physical loss or damage, Lindenwood argues that this case is unlike all the others in the country, thousands around the country, in which cases courts have dismissed similar suits, and it argues that this case is unlike over 100 appellate cases in which dismissals have been affirmed, including all the decisions of this court and all state supreme courts. But this case really is no different from any of the others. As the court has held, the inability to use property as desired does not constitute physical loss or damage, and the alleged presence of the COVID-19 virus in or around property also does not constitute such physical loss or damage. Lindenwood abandons on appeal any argument about loss of use due to governmental restrictions. They are now focusing exclusively on the argument that its allegations about the virus are sufficient to allege physical damage, and the district court was wrong to dismiss the claims as implausible. But the district court was clearly correct in rejecting those allegations. Now, if you didn't have the exclusion, would it not be possible that a virus or pathogen could cause contamination of physical property that would be covered by the policy for at least cleanup, disinfecting, loss of use for whatever period of time it takes to remove the virus? Your Honor, to the extent your question asks, is it possible for a virus to cause physical damage, it depends on the virus, it depends on the property. In a case called Curtis O. Reese, the Nebraska Supreme Court had a case in front of it where a virus called the pseudo-rabies virus was spread by windstorm and infected a herd of swine and did cause physical damage to the swine. So livestock was covered, and living things can be physically injured by a virus, and that was physical damage in that case. But virus doesn't physically damage inanimate, non-living property. And to the extent your question asks, is it physical damage if it needs to be cleaned? The answer is no. Things that need to be cleaned, merely need to be cleaned, are not damaged. We know this from our common sense and common experience. The 11th Circuit, I think, put it best about a year ago in a case called Mama Jo's, where the claim was made by a restaurant for inability to use its restaurant because of road construction, street construction outside of its restaurant, causing dust to infiltrate into the tables, into the chairs. It had to be cleaned every day because of the construction dust. The 11th Circuit said cleaning, even repeated cleaning, even aggressive cleaning, isn't damaged. If it can be cleaned, it's not damaged. If anything can be cleaned to restore it to its normal character, it isn't physically damaged. And multiple appellate courts have reached the same conclusion in the context of the COVID virus, primarily because they note that the policy provides, in the context of business interruption coverage, that there has to be a period of liability. That is, the time that is covered for any business income loss starts with the physical damage and ends when the property could be repaired or replaced. If the property doesn't need to be repaired or replaced, it's not damaged in the first place. But there might conceivably be a virus which causes that sort of property damage. Now, if you look at COVID-19 and it's the life expectancy of live COVID vaccine on physical property being as short as it is, you know, 48 hours or less, it's not likely to happen. But you could take something like a live smallpox virus, and if live smallpox virus is accidentally discharged into a laboratory, the laboratory would be such that it would be physically damaged to the point where to contain the biohazard, it would have to be completely destroyed and rebuilt, right? And so that seems to me to be an example, at least. So your honor is hypothesizing a situation of something that is so overwhelmingly either deadly or damaging to human health that no one can even go in there, not without extraordinary measures like biohazard suit, and requires some sort of extraordinary mediation, not cleaning, not just the regular clean. Lindenwood cleaned with spic and span. And there are multiple kinds of household cleaners that can be used to clean. So yes, one can hypothesize a situation, and courts have acknowledged or have held, that the presence of some of a substance that can't be seen, that so pervades the building, that it can't be used, creates a danger to human health, is completely unusable, completely uninhabitable, that might be a physical loss. That's not the case here. We know that from common experience. Otherwise, every building in the entire world would be uninhabitable, and we know it wasn't. I only smile thinking about when this, in March and April of 2020, are leaving our mail in the garage for two days, because we thought there'd be virus on the mail, and we'd leave our groceries out, because we thought maybe the groceries would have, the canned soup would have virus on it. But we also went to the grocery store, and we all still went to the restaurants, even with social distancing. If it were smallpox, the build might be different. In this case, excuse me, in this case, there is not complete loss of habitability, and therefore no physical loss or damage. Thank you. Thank you, Mr. Hofer. May it please the court. I think what we just heard is that a virus can cause physical loss or damage, and the question is whether the virus in this case was of a magnitude to do so. And I do think it's important that in the spring, we were making all these precautions, because that's the time period that we're talking about here. That's when these shutdowns happened. That's when Lindenwood closed its campus. And the magnitude is a fact question. Judge Erickson, we pled in our complaint that the virus has been shown to last for up to weeks on surfaces. That's an allegation that has to be accepted as true. We can't take everything we've heard about the coronavirus and assume judicial notice of that. We have to decide this on the facts, or the allegations. And then we should be entitled to go into discovery and prepare experts and the jury to decide these issues, as occurred in the Texas case, and as occurred in the Casey Hopps case. Those are fact issues. Whether this property was damaged is a fact issue if you accept that a virus can cause damage on this complaint. If there aren't any further questions, I would respectfully ask that the court reverse the judgment below. Thank you. Thank you. Thank you for your appearance and arguments today. Case will be submitted, and we'll issue an opinion in due course.